The attempted appeal from the order denying the motion for a new trial is dismissed.

For the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1942.

[Crim. No. 3557.   Second Dist., Div. One.   June 30, 1942.]

THE PEOPLE, Respondent, v. JOHN J. ATWATER, JR., Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant was convicted by the court, a jury having been waived, on three counts of an information charging him with grand theft. Following his conviction, appellant's motion for a new trial was denied, proceedings were suspended without judgment being rendered and appellant was granted probation for a period of ten years, a condition thereof being that he make restitution. The appeal herein is taken from the order denying the motion for a new trial.

Appellant has been a licensed real estate broker in the State of California for about ten years; and the circumstances which led to his prosecution on the charges herein arose out of certain real estate transactions in which appellant had acted as agent. Count one of the information charged appellant with the theft of $2,590.24, the personal property of Julia P. Casanega and Lorraine Casanega, Trustee, count two with the theft of $2,149.87, the personal property of Julia P. Casanega, and count three with the theft of $500, the personal property of Arthur W. and Frances H. Hartigan. Appellant's sole ground of appeal is that the evidence is insufficient to justify a conviction for grand theft.

At the trial the following facts were put in evidence. The Casanegas desired to exchange certain real property in Nogales, Arizona, for property in California, and called several real estate concerns or brokers on the matter, appellant among them. A conference with appellant resulted in his acting as agent for the Casanegas. After necessary information as to the Nogales property had been given appellant by the Casanegas, appellant took the Casanegas to see a certain parcel

of real estate in Los Angeles, with which property the Casanegas expressed satisfaction. According to Lorraine Casanega, appellant had stated that an exchange of the Nogales property for property in California could be handled "if we had some note or mortgage or somebody else's property." Julia P. Casanega is the widow of one Tom Casanega of Nogales and Lorraine Casanega is their daughter and was made administratrix of her father's estate. Among the assets of the estate was a mortgage on a piece of property in Arizona, which mortgage was later supplanted by a new mortgage made to Julia P. Casanega, as mortgagee. As part of the transaction involving the Nogales property appellant obtained an assignment of this latter mortgage, together with an executed satisfaction of the same from Julia Casanega, for the purpose of disposing of the mortgage. In addition, appellant obtained a $1,000 note from the Casanegas for the expressed purpose of raising cash in case appellant was unable to dispose of the mortgage. Lorraine Casanega also executed a power of attorney to appellant. As a result of appellant's efforts, a realty and trust company in Tucson, Arizona, purchased the mortgage, issuing its check therefor in the sum of $2,590.24. Appellant also arranged with the same company for a loan on the Nogales property of the Casanegas, and told the secretary of said company to hold the mortgage papers until he returned, when he would bring the Casanegas to complete the transaction. With the check of the realty company, given for the mortgage, appellant obtained a cashier's check in the same amount from a national bank in Tucson. While in Tucson appellant purchased a Cadillac automobile for $2,219.50 and gave his personal check therefor. Appellant drove this automobile to Los Angeles via San Diego; and while in San Diego appellant cashed the check of the national bank and purchased a $2,000 cashier's check from the United States National Bank of San Diego. Later, appellant deposited to his account in a Los Angeles bank the cashier's check for $2,000 and $500 in currency. On the same date that this deposit was made a payment of $375 was made out of the same account on a house being purchased by appellant and occupied by him. Later Mrs. Casanega signed a mortgage for $3,250 on the Nogales property, for which she was handed two checks by the secretary of the Tucson realty company, one in the amount of $500 and the other in the sum of $1,649.87. The difference of $1,100.13

between the amount of the mortgage and the checks was for delinquent taxes. The total cost of the automobile, including accessories and other costs, was $2,619.67. At appellant's direction, Mrs. Casanega endorsed both of the checks last mentioned. The $500 check was used by appellant in payment on the Cadillac automobile. Appellant characterized this $500 as a fee. After giving Lorraine Casanega a check for $100, appellant deposited the check for $1,649.87 to his account in his Los Angeles bank, together with the sum of $100 in currency. On giving Lorraine Casanega the check for $100, appellant told her that he would have an account ready for her mother the following Tuesday. Thereafter Lorraine Casanega asked appellant to see about a mortgage held by the Casanegas on property in Colima, Mexico, and agreed to pay appellant $500 additional for his work in connection with that mortgage. However, appellant did not go to Colima in connection with this matter. Appellant arranged for and obtained a loan of $1,000 from an automobile finance company on the Cadillac automobile, placing the proceeds thereof in the safe in his office. Appellant later, in January, 1941, sold the car for $1,050, and after the loan of $1,000 was paid off to the finance company by the purchaser of the automobile, and other expenses deducted, appellant received a check therefor in the sum of $17.25. On September 23, 1940, appellant's Los Angeles bank account, wherein the deposits above mentioned had previously been made, had a balance of $1.48. This was about two months after the money in question had been deposited. The proceeds received by the Casanegas from the foregoing transactions amounted to $175. No deal was ever entered into for the exchange of the Casanega property for the Los Angeles property first shown the Casanegas by appellant; but appellant claims that an escrow was later opened for the exchange of other property, which transaction failed of completion because of the revocation of appellant's power of attorney and the refusal of the Casanegas to take steps to protect the equity in the Los Angeles property, the mortgage on which was foreclosed and the property sold. The record shows that an escrow was opened between the owner of the property and a Mrs. North, and another escrow between Mrs. North and the Casanegas. The Casanegas never signed the escrow instructions. Mrs. North testified that she entered the transaction merely as an accommodation to appellant in order that the property might be

refinanced. The deed from the grantor in the first escrow was never delivered. Mrs. North executed a grant deed of the California property to Lorraine Casanega. This deed was recorded. On the date the deed to Lorraine was recorded, appellant appears to have induced Mrs. Cox, the owner of the California property, to sign a deed to the property under the following circumstances, as related by Mrs. Cox: "I saw him on the 4th of December. He called me to come over to his office, and he said, 'I think it is about time I was giving you a little bit of money.' He read me a paper concerning the property had been sold to a Mrs. North for $5,500, he said, by the escrow papers, and so he said, 'I think I had better give you a little money,' and he said, 'I have a paper here I want you to sign,' and he said, 'I will read it to you.' I didn't have my glasses, and he read it to me and he said, 'Mrs. North is having trouble in raising the money, and she is trying to sell her automobile to pay the rest that is due me.' He said, 'The place was sold, and we are trying to refinance it to get you the money,' and so he read this over to me, and he said, 'I want you to go over to the escrow department to sign this paper, and if you don't get the money for 30 days, so you can get interest on it,' and he took me over in Westwood, and we went in there and he said, 'The gentleman I want to see is not here,' and he went out and he was gone for about 45 minutes, and he came back and he said, 'I could not find him,' and he said he went to lunch, and we come back in about half an hour and he introduced me to Mr. Elfstrom, and he said, 'I want to get this paper fixed up for Mrs. Cox,' and he said, 'Sign here,' and I thought it was the same paper that he read over in his office about the automobile, and I signed it, and then he gave me $50, and I signed what was supposed to be a receipt for the $50, and I never saw him any more." Appellant admitted at the trial that after the property in question was deeded to Lorraine Casanega appellant took the money in his possession and used it for his own purposes. As already mentioned, the California property owned by Mrs. Cox, which was deeded to Lorraine Casanega, was sold under foreclosure.

As to appellant's dealings with Mr. and Mrs. Hartigan, the basis for the third count of the information, the Hartigans went to appellant's office and inquired about a residence appellant had advertised for sale. Appellant showed the Hartigans a residence that interested them. The price of this

property was $6,750; and appellant told the Hartigans that it would be helpful in making a quick sale if the Hartigans would produce ready money. Accordingly, the Hartigans gave appellant a diamond ring and a check for $100. An additional $400 was paid into the transaction by Mr. Hartigan's brother-in-law. Some time later the owner of the residence decided not to sell. It was understood that the ring and money were to be returned if the deal did not go through. About three or four months before the trial of the instant action appellant returned the diamond ring to the Hartigans, but appellant never returned the money although demand was made upon him.

Appellant concedes that the evidence establishes that appellant was acting in the capacity of an agent and that he obtained and held the money in question in the capacity of trustee; but appellant contends that it was not established that the money belonged to his principals nor that he converted the money to his own use in violation of his trust. Obviously, the evidence above set forth is sufficient to support charges of grand theft under section 484 of the Penal Code. Section 508 of the Penal Code states: "Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment, as such clerk, agent, or servant, is guilty of embezzlement." Appellant's attempts to explain or justify his conduct merely served, if at all, to create a conflict in the evidence. The appeal is without merit; and the order denying the motion for a new trial is affirmed.

York, P. J., and White, J., concurred.